LLOYD GAYNOR et al., Respondents, *v.* NELSON A. ROCKEFELLER, as Governor of the State of New York, et al., Appellants.

First Department, April 21, 1964.

*Joel L. Cohen* of counsel (*Seymour B. Quel, Morgan N. Lipton* and *John L. Radlein* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for Robert F. Wagner, as Mayor, and others, appellants.

*Samuel A. Hirshowitz* of counsel (*George D. Zuckerman* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for Nelson A. Rockefeller, as Governor, and others, appellants.

*Walter M. Colleran* for Unions, appellants.

*Robert L. Carter* of counsel (*Jerome Rubenstein* with him on the brief), for respondents.

STEVENS, J. Defendants appeal from so much of order entered December 12, 1963 as denied their respective cross motions to dismiss the amended complaint on the ground that it fails to state a cause of action, and that the court has not jurisdiction

of the subject matter, etc., pursuant to 3211 Civil Practice Law and Rules.

This is a class action for a declaratory judgment and an injunction, brought by four Negroes, citizens of the United States and residents of the State of New York, who have attempted unsuccessfully to gain admittance to certain of defendant union locals (herein unions) or to their apprentice programs. The complaint is in equity and contains three causes of action. The first cause seeks a preliminary injunction pursuant to 6301 Civil Practice Law and Rules. The second cause seeks a declaratory judgment pursuant to 3001 Civil Practice Law and Rules and the third cause is a taxpayer's action brought under section 51 of the General Municipal Law, as amended by chapter 528 of the Laws of 1963. Broadly, the plaintiffs seek a declaration of the legal rights and relations of the parties in this controversy and to permanently enjoin them from the commission or omission of certain specified acts. The complaint is directed against three classes or groups of defendants: (1) State officials, (2) city officials, (3) locals of international unions affiliated with AFL–CIO and Locals 1, 2 and 638 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada. In the interest of clarity the relief sought as to each will be pointed out and the position taken by each group of defendants in answer thereto will be defined.

The complaint refers particularly to six construction contracts (1 State and 5 city) on which public moneys are being expended. Plaintiffs charge the construction work is dominated or controlled by defendant unions whose discriminatory practices bar plaintiffs and the class they represent from membership or admittance to their apprentice program and consequently from employment. Plaintiffs seek to enjoin defendants State officials from further expending public funds on the State contract listed and seek judgment requiring such officials to enforce sections 43 and 45 of the Civil Rights Law and section 220–e of the Labor Law with respect to such contract. As to group two, defendants city officials, plaintiffs seek to enjoin them from continuing to expend public funds on the five city contracts enumerated, to enjoin them from entering new contracts in which defendant unions have an interest while such unions continue their policy of racial discrimination, and to direct such city officials to enforce section 343–8.0 of the Administrative Code of the City of New York with

respect to such contracts. The relief sought against the third class of defendants, the unions, is to enjoin such unions from requiring applicants to have sponsors among current or former members preliminarily to admittance, to adopt fair tests universally applied for admittance to apprentice training programs, to enjoin defendant unions from using the present list of applicants discriminatorily obtained, and to destroy present lists which are allegedly used as devices of racial discrimination.

Plaintiffs moved upon the amended complaint with supporting affidavits for a preliminary injunction and defendants cross-moved for dismissal of the complaint. Plaintiffs' motion for a preliminary injunction was denied as were defendants' cross motions, and it is from the order denying such cross motions that these appeals are taken. Since defendants' appeals do not rest upon the same ground, the position of each group is set forth.

Appellants State officials claim respondents lack standing as personally aggrieved parties to bring this action; that they have adequate legal and administrative remedies available, consequently the present action is untenable; the discriminatory contract complained of cannot be attributed to State action or support an action against State officials; New York State is an indispensable party but it has not consented to be sued and cannot be made a party; and that the court has no jurisdiction over the person of the Governor.

Appellants city officials assert that primary jurisdiction rests in the State Commission for Human Rights and therefore the court should not entertain jurisdiction; that the unions do not act under color of State authority and their alleged discriminatory policies do not support a cause of action against these officials; no cause of action is stated for injunctive relief; and the complaint is insufficient under section 51 of the General Municipal Law.

In some instances parallel arguments are advanced by State and city appellants, so their arguments will be considered before considering the unions' position. Before discussing the broader issues involved attention is given first to the third cause, the taxpayer's action, to determine if it is properly maintainable under section 51 of the General Municipal Law.

A taxpayer's action is purely a creature of statute and section 51 sanctions court proceedings by a taxpayer " either to prevent an illegal official act against, or waste or injury to, the property of the municipality " (*Carpenter* v. *Wise*, 92 Misc. 246, 253, affd. without opinion 173 App. Div. 998). The acts complained of must be fraudulent " or a waste of public property in

the sense that they represent a use of public property or funds for entirely illegal purposes'' (*Kaskel* v. *Impellitteri*, 306 N. Y. 73, 79, cert. den. 347 U. S. 934) or where fraud, collusion or bad faith exists (*Admiral Realty Co.* v. *City of New York*, 76 Misc. 345, affd. 151 App. Div. 888, affd. 206 N. Y. 110). The term '' waste or injury '' as used in section 51 contemplates more than improvident or unwise spending of public funds (*Ziegler* v. *Chapin*, 126 N. Y. 342; *Kraushaar* v. *Zion*, 135 N. Y. S. 2d 491); it refers to and includes only illegal, wrongful or dishonest acts (*Daly* v. *Haight*, 170 App. Div. 469, affd. 224 N. Y. 726). The illegal action must be injurious to municipal interests so as to waste public funds or cause public injury (*Sengelaub* v. *Town of Smithtown*, 29 Misc 2d 655).

Plaintiffs complain here of the letting of certain contracts, the making of financial commitments, and the expenditure of public funds by defendants public officials on these contracts. Such contracts may not be attacked by a taxpayer's suit unless shown to be clearly illegal or a waste of public funds (*Grace* v. *Scott*, 125 Misc. 660, affd. 214 App. Div. 792). General allegations of wrongdoing or a general assertion of community damage without more is not sufficient (*Sengelaub* v. *Town of Smithtown, supra*; *Schieffelin* v. *Craig*, 183 App. Div. 515). While plaintiffs allege that the exclusion of qualified Negroes from the possibility of public employment solely because of race causes public injury not only to Negroes as a class but to the entire community, which assertion may well be correct, such allegations are insufficient when tested by the standards enumerated. Moreover, the contracting parties are not parties to this suit. As to the third cause there is both factual insufficiency and a defect of parties defendant.

State and city appellants contend that the discriminatory conduct of the unions of which plaintiffs complain is not under color of State or city authority, is not sanctioned by them and will not support an action against them. They point to provisions of State law and the Administrative Code which prohibit discrimination or discriminatory practices by employers and labor organizations (Executive Law, §§ 290, 292, 297; Civil Rights Law, § 43; Administrative Code, § 343–8.0), to the requirement under section 220-e of the Labor Law that every contract '' for or on behalf of the state or a municipality for the construction, alteration or repair of any public building or public work or for the manufacture, sale or distribution of materials, equipment or supplies shall contain provisions by which the contractor with the state or municipality agrees: (a) That in the hiring of employees for the performance of

work under this contract or any subcontract '' there shall be no discrimination by reason of race, creed, color or national origin against any qualified and available citizen of the State of New York, and that no contractor or subcontractor or any person acting in their behalf shall discriminate against or intimidate any employee on account of race, creed, color or national origin. Section 343–8.0 of the Administrative Code also prohibits discrimination in employment and provides that disobedience to its various subdivisions '' shall be deemed a violation of a material provision of the contract.'' Appellants also point to the penalty provisions of section 220-e and to sections 700, 701 and 514 of the Penal Law dealing with the protection of civil and public rights and penalties for any violation thereof.

The argument of appellants public officials of primary jurisdiction in, and the availability of an adequate administrative remedy by reason of the creation and existence of the State Commission for Human Rights (SCHR) so as to preclude these plaintiffs, is not determinative here. SCHR and proceedings before it cannot represent or be exclusive remedies when constitutional rights are involved (N. Y. Const., art. I, § 11; Executive Law, § 300). The creation of SCHR and the conferring upon it of certain powers merely afford an additional forum or avenue for possible redress of actions prohibited by constitutional or statutory law. It is only when a procedure is pending before SCHR that such procedure is exclusive (Executive Law, § 300; *Matter of Castle Hill Beach Club* v. *Arbury,* 208 Misc. 622, 625, mod. on other grounds 1 A D 2d 943, republished 1 A D 2d 950, affd. 2 N Y 2d 596).

The law provides punishment or penalties for persons or labor organizations which discriminate unlawfully (Penal Law, §§ 514, 701; Civil Rights Law, §§ 41, 43; Labor Law, § 220-e, subd. [c]). The State or municipality may cancel public works contracts upon a sufficient showing of acts in violation of law (Labor Law, § 220-e, subd. [d]; Administrative Code, § 343–8.0). Additionally, SCHR is given extensive powers, by statute, to investigate alleged discriminatory conduct and to take appropriate steps to effect its discontinuance (Executive Law, art. 15).

Respondents recognize the existence of SCHR and of the various laws cited. They know that laws are not self-executing and depend for their effectiveness upon the sincerity and depth of conviction of public enforcement officials. In an effort to sustain their charges and to persuade the courts to exercise their equitable powers, respondents sought a preliminary and,

eventually, a final hearing. A weakness of their position is the fact that appellants public officials have no contracts with defendant unions. The contracts are with private firms none of whom are parties defendant here. That all or most of the employees on such contract jobs are members of appellant unions, and that such jobs are in effect union jobs closed to outsiders, will not alone permit respondents to by-pass established procedures by failing to join the contractors. The discriminatory actions complained of are necessarily those of the contractors though, perhaps, under pressure from defendant unions. Such acts cannot be attributed to appellants public officials or considered governmental actions. Theirs is the power to cancel for, but not to correct, such actions.

An injunction will not be summarily issued against public officials, for the courts will not presume that such officials will fail or refuse to perform the duties of their office. The presumption is, of course, rebuttable. Before the drastic remedy of injunction will be granted or relief in the nature of mandamus directed, it must clearly and sufficiently appear that defendants public officials have failed to perform a duty imposed upon them by law. Respondents must show as to the contracts in controversy that employment was wrongfully refused or the law violated, and additionally that the proper public officials were duly notified, requested to act in accordance with applicable law, but failed to do so. *Todd* v. *Joint Apprenticeship Comm. of Steel Workers of Chicago* (223 F. Supp. 12) is not to the contrary. In that case there was a clear showing that the Federal Government through two of its agencies and the State Government through one of its agencies made it possible for the defendants to realize and perpetuate discriminatory practices against four qualified applicants solely because they were Negroes. The agencies were fully informed and failed to take any corrective action.

The appellant Rockefeller as Governor of the State "is immune from interference by judicial process and free from judicial control in his performance of executive powers." (See *Matter of Donnelly* v. *Roosevelt* [*In Re Walker*], 144 Misc. 525, 532 and cases cited; *Vanilla* v. *Moran,* 188 Misc. 325, affd. 272 App. Div. 859, affd. 298 N. Y. 796.) It has also been held that the Governor is immune from judicial interference when in the performance of ministerial duties as well (*People ex rel. Broderick* v. *Morton,* 156 N. Y. 136). This immunity extends to the Governor as the chief executive. The source of his rights, powers, duties and privileges as such chief executive is found

in the Constitution (art. IV) or in laws. enacted by the Legislature under the Constitution. The Constitution also prohibits discrimination in civil rights by a person or State on account of race, color, creed or religion and declares a guarantee of equal protection of the law to all persons (N. Y. Const., art. I, § 11). A Governor who violated that section of the Constitution would not be acting in the exercise of his executive powers or fulfilling his oath to uphold the Constitution. It has been held that State officials, including a Governor or Attorney-General, " are not immune from suit brought to *prevent* their acting under color of authority, purported to be given to them by an unconstitutional enactment, in such a manner as to infringe the constitutional right of individuals " (*James* v. *Almond,* 170 F. Supp. 331, 340, and cases cited; *Faubus* v. *United States,* 254 F. 2d 797; *Ex parte Young,* 209 U. S. 123, 159–160). (Cf. *Childs* v. *Rockefeller,* U. S. Dist. Ct., S. D. N. Y., 63 Civ. 2127, Oct., 1963; *Wright* v. *Rockefeller,* 376 U. S. 52, in which the question was whether petitioners proved that the boundaries of the 17th and 18th Congressional Districts were probably drawn by the Legislature along racial lines. Rockefeller was at most a proper party because the constitutionality of a State statute was under attack (U. S. Code, tit. 28, § 2281; see U. S. Const., 11th Amdt.). It was not claimed that he had acted in violation of law and of the plaintiff's constitutional rights since congressional lines were drawn by the Legislature. The Governor was sued as a representative of the State and also as one who possibly could be involved in enforcement. If State officials act in excess of their legal authority or pursuant to an unconstitutional statute, such persons are stripped of their official character and undoubtedly could be enjoined as individuals (*Faubus* v. *United States, supra*; *Orleans Parish School Bd.* v. *Bush,* 242 F. 2d 156, cert. den. 354 U. S. 921). (See *Ex parte Young, supra*; *Scully* v. *Bird,* 209 U. S. 481.) However, we need not pass upon that question. There is no showing upon the record that the Governor or the Mayor has failed to perform a legal duty or that they have affirmatively violated any constitutional or statutory provision.

The third group of defendants, appellant unions, did not deny the charges of racial discrimination but simply moved to dismiss the complaint pursuant to subdivisions 2, 3, 7 and 10 of 3211 Civil Practice Law and Rules. On that part of the motion claiming insufficiency, the factual averments of the complaint are taken as true. Their contention that this is not a proper class action is not persuasive, particularly in light of

a recent holding of this court (cf. *Onofrio* v. *Playboy Club of N. Y.*, 20 A D 2d 3). Appellant unions urge that their apprentice waiting lists contain the names of persons qualified and that the court should not proceed in their absence as parties defendant, nor should the court proceed against the seven defendant unions not alleged to have personally discriminated against these plaintiffs. If the apprentice lists were formulated by or as a result of discriminatory acts in violation of law, neither they nor defendant unions would thereby obtain immunity from State or judicial action in any proceeding properly brought (Civil Rights Law, §§ 41, 43; Executive Law, § 296; *Todd* v. *Joint Apprenticeship Comm.*, 223 F. Supp. 12, *supra*; see, also, State Commission for Human Rights, *Attorney-General* v. *Local No. 28*, Complaint No. C9287–63, a proceeding pending before the SCHR at the time of this appeal).

The racial policies of exclusion by some of defendant unions, whether by constitutional provision, tacit agreement and common understanding, or by tradition, are of so long duration and so widely known that the courts might, if they so elected, take judicial notice of the fact. Respondents assert, without contradiction, defendant unions exercise a virtual monopoly of skilled crafts in the construction industry and their policies effectively bar respondents and others similarly situated from employment in particular categories. Establishing the contention as a factual truth, in a proper proceeding, would permit legal redress (cf. *Railway Mail Assn.* v. *Corsi*, 293 N. Y. 315, affd. 326 U. S. 88).

Appellant unions contend the National Labor Relations Board has exclusive jurisdiction, and that this is a labor dispute within the meaning of section 807 of the Labor Law and an injunction cannot be granted. Section 701 of the Labor Law provides:

" 8. The term ' labor dispute ' includes, but is not restricted to, any controversy *between employers and employees or their representatives* as defined in this section concerning terms, tenure or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to negotiate, fix, maintain or change terms or conditions of employment, or concerning the violation of any of the rights granted or affirmed by this article, regardless of whether the disputants stand in the relation of employer and employee." (Emphasis supplied.) * * *

" 4. The term ' representatives ' includes a labor organization * * * whether or not employed by the employer of those whom he represents."

Obviously this disagreement is not between employers and employees or their representatives, so an element essential to its classification as a labor dispute is lacking. (As to unfair labor practices, see Labor Law, § 704; and as to apprentice committees, apprentice agreements and suggested apprentice standards see Labor Law, §§ 814, 815, 816.)

The term "labor dispute" under the National Labor Relations Act (U. S. Code, tit. 29, § 151 et seq.) "includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee " (U. S. Code, tit. 29, § 152, subd. [9]). A reading in its entirety of section 158 " Unfair labor practices " reveals that the law recognizes the right of a union to prescribe its own rules for acquisition and retention of membership (subd. [a], par. [5], cl. [b], subd. [1]), and the right of an employer to contract with a union (subd. [a], par. [3]). Obviously, the right to discriminate by racial exclusion from membership would not have been written into the same law which defines a " labor dispute " and protects the union in the exercise of a right of employee representation regarding wages, hours or working conditions. Neither a State nor the Federal Government could so arbitrarily and unconstitutionally differentiate between its citizens solely because of race. Respondents are without the closed circle, seeking entry or admission to union membership.

A State may always act to protect its citizens from acts committed in violation of constitutional rights (cf. Railway Mail Assn. v. Corsi, 293 N. Y. 315, affd. 326 U. S. 88, supra). Moreover, in light of the history and stated purposes of the Labor Management Relations Act, 1947 (U. S. Code, tit. 29, §§ 141, 151, 157, 158 et seq.), it was not designed to deal with discriminatory practices based solely upon race or religion. The act did not create, but sought to protect, the workers' right to organize and bargain collectively. It sought also to promote industrial peace and the free flow of interstate commerce. Enactment of such legislation did not thereby divest a State of the power to act when its laws are disobeyed and the rights of its citizens violated, particularly when disorder could well result (cf. Automobile Workers v. Russell, 356 U. S. 634; San Diego Unions v. Garmon, 359 U. S. 236). Discriminatory union activity resulting in exclusion from employment by reason of race, on projects supported and paid for by public funds,

including tax moneys from those excluded, is not protected from State or municipal interference. Nor is this a matter in which the National Labor Relations Board has exclusive or even special competence (U. S. Code, tit. 29, §§ 153–156). The board is essentially a fact-finding tribunal concerned with the administration of labor relations in its classic sense. Nor do the projects in controversy so affect interstate commerce that the State or the municipality should defer to the board. When undemocratic or unsound labor practices are adopted by unions on particular jobs solely by reason of race or creed, such jobs should become open jobs, or the necessity for constitutional or statutory revision could well be considered by the proper authorities.

The present action is not a proper vehicle to attack the practices complained of. These unions are not parties to the contracts in controversy and there is a fatal deficiency of parties defendant in that the necessary parties to such contracts are not joined (*Henshel* v. *Held*, 13 A D 2d 771). The further relief sought by respondents, of judicial supervision of union activities in the manner requested, is not within the scope of judicial competence.

The order appealed from should be reversed on the law for the reasons heretofore stated, the complaint dismissed, without costs and without prejudice as to any or further action as plaintiffs may be advised to pursue.

McNALLY, J. P., EAGER, STEUER and WITMER, JJ., concur.

Order, entered on or about December 12, 1963, unanimously reversed on the law for the reasons stated in the opinion of this court filed herein, the complaint dismissed, without costs and without prejudice as to any or further action as plaintiffs may be advised to pursue. Settle order on notice.