Keiko WESTPHAL, Plaintiff,

v.

CATCH BALL PRODUCTS CORP., et ano., Defendants.

No. 95 Civ. 9613 (LAK).

United States District Court,
S.D. New York.

Feb. 18, 1997.

Noah A. Kinigstein, New York City, for Plaintiff.

Ronald N. Inouye, Inouye & Ogden, New York City, William L. Kandel, McDermott, Will & Emery, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The jury in this case found that defendant Catch Ball Products Corporation ("Catch Ball") discriminated against plaintiff Keiko Westphal on the basis of age and retaliated against her for filing a complaint with the Equal Employment Opportunity Commission. It awarded $45,000 in back pay, $5,000 in compensatory damages, and $25,000 in punitive damages. The Court thereafter awarded front pay in the amount of $92,859.[1] (Findings of Fact and Conclusions of Law, Dec. 6, 1996) Defendant now moves for judgment as a matter of law on the ground that the Court lacks subject matter jurisdiction and that there was insufficient evidence to permit the jury to find either age discrimination or retaliation.

### I

The first of defendant's jurisdictional challenges is the contention that there was no federal jurisdiction and that the exercise of supplemental jurisdiction therefore was inappropriate.

■ The complaint alleged age and gender discrimination claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1981 as well as pendent state law claims. No motion to dismiss the complaint was made. The scheduling order, dated January 31, 1996, required that any motions for summary judgment be filed on or before May 30, 1996. No such motion was filed, however, until immediately before the commencement of the trial on October 27, 1996. Defendant then contended, among other things, that its employees were insufficiently numerous to bring it within the coverage of Title VII or ADEA, that the Section 1981 claim was insufficient, and that the Court therefore lacked subject matter jurisdiction. Inasmuch as Rule 56(c) requires that motions for summary judgment be served at least ten days before the hearing, it was obvious that the trial would be concluded before the motion was ripe for decision.[2] The Court therefore indicated that the jurisdictional point, which in any case involved factual issues as to the number of defendant's employees and whether defendant and related entities should be considered to be a single employer, might be raised by motion during the trial. (Tr. 2–5)

■ Title VII and ADEA define "employer" to mean entities with 15 and 20 or more employees, respectively. 42 U.S.C. § 2000e; 29 U.S.C. § 630(b). The evidence at trial, viewed in the light most favorable to the plaintiff, showed that defendant Catch Ball did not have more than six employees at any relevant time. The defendant, however, conceded that Catch Ball and two other related companies, Orange Point and Gallup, together employed at least 15 people. (Tr. 187)

1. The case was consolidated for trial with *Preda v. Catch Ball Products Corp.*, 96 Civ. 0101 (LAK). The jury found for defendant in that case, which now is on appeal.

2. While defendant's motion was styled one for summary judgment, it arguably was a speaking motion pursuant to Rule 12(b)(1) insofar as it raised the jurisdictional issue. This Circuit, however, treats such 12(b)(1) motions as motions for summary judgment. *See Exchange National Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976), *cert. denied* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). Accordingly, the Court regards Rule 56(c) as applicable to them.

Assuming that Orange Point, Gallup and Catch Ball properly were considered a single employer, the three companies together had 20 employees in 1996 at the time plaintiff was terminated.[3]

Defendants moved for a directed verdict at the end of the plaintiff's case on the grounds, among others, that (1) the Section 1981 claim failed to state a cause of action, (2) there was insufficient evidence to permit the conclusion that the defendant employed the requisite number of persons to come under ADEA or Title VII, and (3) there was no evidence of gender discrimination. (Tr. 181–204) The Court granted the motion as to the Section 1981 and Title VII claims, the latter on the ground that there was no evidence of gender discrimination (*id.* 195). Although it expressed reservations as to whether the evidence was sufficient to permit amalgamation of Orange Point and Gallup with Catch Ball, it denied that motion without prejudice to renewal. Catch Ball properly preserved the point by Rule 50 motions at the close of the defendant's case and of all the evidence. The jury returned a special verdict finding that Catch Ball should be considered a single employer with both Orange Point and Gallup.

■ Defendant now urges the Court to hold that it lacked any basis of federal subject matter jurisdiction. Its first theory is based upon the argument that the affidavits submitted in support of its motion for summary judgment demonstrated that Catch Ball and Orange Point were in no way integrated and that those affidavits were unrebutted. (Def.Mem.8) The argument, however, overlooks a basic fact: the summary judgment motion never was litigated and in fact was mooted by the trial.

Defendants' summary judgment motion was filed nearly five months after the deadline fixed by the scheduling order and only at the start of the trial. It was never answered because the scheduling order and Rule 56(c) were not complied with, and the Court made it plain that the point would be taken up during the trial. The evidence upon which Catch Ball now relies never was offered at trial and therefore never was properly before the Court. The jurisdictional issue therefore turns on the trial record.

■ Defendant's next argument is that the record was devoid of admissible evidence sufficient to justify a finding that Catch Ball and Orange Point were a single employer.[4] While there are some differences in approach to the single employer issue, the test in this circuit is "whether 'all the circumstances of the case' tend to show the absence of an arm's length relationship between two entities." *Rivera v. Puerto Rican Home Attendants Services, Inc.,* 922 F.Supp. 943, 949 (S.D.N.Y.1996) (quoting *Lihli Fashions Corp. v. NLRB,* 80 F.3d 743, 747 (2d Cir.1996)). Pertinent factors are evidence of "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Id.* (citing *Brower–Coad v. Fundamental Brokers, Inc.,* 856 F.Supp. 147, 150 (S.D.N.Y.1993)); *accord, Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir.1995).

■ In this case, plaintiff adduced evidence that Mr. Naraoka was the president of both Catch Ball and Orange Point, that he used the two companies to perform the same function in different parts of the United States, that Orange Point from time to time

---

**3.** No party sought, and the jury was not asked to make, a finding as to the number of employees the three companies had in any of the relevant years. The Court therefore exercises its power under FED.R.CIV.P. 49 to make such findings now. Catch Ball during most of the relevant period had six employees: plaintiff Westphal, Gabriel Preda, Sui Ling Lam, Sally Lee, Eric Ng, and Mr. Naraoka. (Tr. 32, 156, 211) The number dropped to five in September 1995 when Preda was fired. (*Id.* 55 (fired Sept. 1995), 228 (Preda not replaced)) In 1993, 1994, 1995 and 1996, Orange Point and Gallup had a total of 8, 13, 13 and 14 full time and 3, 0, 0 and 1 part time employees who worked every day during a total

of 20 weeks during the period, respectively. (*Id.* 205–06) The part time employees who work regularly must be included in determining whether the statutory definition is satisfied. *Cohen v. S.U.P.A.,* 814 F.Supp. 251, 254–55 (N.D.N.Y. 1993). Accordingly, the three companies together had 17 employees in 1993, 19 in each of 1994 and 1995, and 20 in 1996 at the time plaintiff was terminated.

**4.** Although it does not mention Gallup, the Court assumes that it intends the same argument with respect to that entity.

had Catch Ball order goods on its behalf for delivery to a Catch Ball warehouse located near Orange Point, that the two companies split commissions, that the two companies spoke frequently on business matters, and that all goods purchased by both were shipped to Mr. Naraoka's Japanese company, Limousine International. She offered testimony that Gallup was set up in conjunction with Orange Point to buy for retail and to ship to Japan as well. (Tr. 31–36) There was evidence that Mr. Naraoka referred to Limousine as "the mother company" and ran both Orange Point and Catch Ball. (Tr. 74; see id. 32)

Defendant argues strenuously that the most important factor in the single employer determination is centralized control of labor relations and that there was no such evidence here. While this, to be sure, is defendant's strongest point, it does not carry the day. These three companies all were small entities. The evidence permitted the jury to find that all were run from Japan by Mr. Naraoka and that Mr. Naraoka dictated the manner in which plaintiff was treated throughout her employment by Catch Ball. This in turn permitted the inference that Mr. Naraoka controlled the labor and employment policies of all three companies and, in consequence, that the factor relied upon by the defendant was satisfied. Even if it was not, the other evidence of common ownership and control and of interrelationship of operations was sufficient to permit the ultimate conclusion that the entities were a single employer. Accordingly, this Court quite plainly had jurisdiction over the Title VII claim until it was dismissed at the end of the plaintiff's case. It retained jurisdiction over the ADEA claim throughout, as the single employer issue ultimately was determined by the jury and the number of employees was not determinable until the close of the evidence. The portion of the judgment pertaining to 1996 events therefore rests both on the ADEA and the state law claims. The balance rests on the state claims.

■ This Court's exercise of jurisdiction to decide the state claims clearly was proper. Section 1367(a) of the Judicial Code, as amended, 28 U.S.C. § 1367(a), provides, with exceptions not here relevant, that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Plaintiff's state law and federal claims of employment discrimination involved exactly the same alleged conduct by the defendants. It simply cannot be denied that they formed part of the same case or controversy as the federal discrimination claims.

To be sure, district courts usually dismiss state claims for lack of jurisdiction where the jurisdiction-conferring federal claims to which they are pendent are disposed of before trial. They certainly have discretion, however, to retain state claims within the supplemental jurisdiction where the federal claims are not disposed of before trial. As the Court made clear during the trial, it would have been an absurd waste of resources to have dismissed the plaintiff's state law claims on jurisdictional grounds even if all of the federal claims had been dismissed during the trial. To do so now, even if the Court were mistaken as to the existence of ADEA jurisdiction with respect to the 1996 portion of the claim, would be even more senseless. Accordingly, lest there be any doubt, the Court reaffirms its exercise of discretion to retain the plaintiff's state law claims irrespective of whether the ruling as to the existence of a viable federal claim is correct.[5]

---

5. Although defendant does not articulate the argument in this way, perhaps its unstated premise is that there was no federal question jurisdiction to begin with and therefore no predicate for the exercise of supplemental jurisdiction. If that is the argument, it is mistaken. Federal courts have jurisdiction to determine the existence or absence of jurisdiction. E.g., Land v. Dollar, 330 U.S. 731, 739, 67 S.Ct. 1009, 1013, 91 L.Ed. 1209 (1947). Here, the existence of federal question jurisdiction depends upon factual issues that were neither ripe nor determined until trial. One of the jurisdictional issues—whether the three companies were a "single employer" for Title VII purposes—required consideration, among other things, of the manner in which their employment policies were determined. This issue overlapped the question whether Catch Ball's

## II

Defendant's next contention is that the judgment, insofar as it rests on the New York State Human Rights Law ("NYSHRL"),[6] must be set aside because plaintiff brought an action on that claim in state court which remains pending. It argues that Section 300 of the NYSHRL makes the state action, while pending, plaintiff's exclusive remedy for violation of that statute. The contention suffers from factual, evidentiary and legal flaws.

To begin with, there is no evidence in the record that plaintiff brought a state court action, much less that it remained pending at the time of trial. While defendant raised this point in the pretrial order and listed a state court complaint as an exhibit (PTO, at 14), neither the complaint nor any other evidence of the existence, scope or pendency of the action ever was offered at trial.

■ Second, even if the Court were to assume that there is a state court action pending, defendant's argument would be unpersuasive. The pertinent provision of the NYSHRL provides:

"The provisions of this article shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this article shall be deemed to repeal any of the provisions of the civil rights law or any other law of this state relating to discrimination because of race, creed, color or national origin; but, as to acts declared unlawful by section two hundred ninety-six of this article, the procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned. If such individual institutes any action based on such grievance without resorting to the procedure provided in this article, he may not

subsequently resort to the procedure herein." N.Y.Exec.L. § 300.

Read in context, it is crystal clear that "the procedure herein provided" refers to administrative proceedings before the New York State Division of Human Rights. *See, e.g., Gaynor v. Rockefeller,* 21 A.D.2d 92, 97, 248 N.Y.S.2d 792, 800 (1st Dep't 1964), *aff'd* 15 N.Y.2d 120, 256 N.Y.S.2d 584, 204 N.E.2d 627 (1965); *Moran v. Simpson,* 80 Misc.2d 437, 438–39, 362 N.Y.S.2d 666, 668 (Sup.Ct. Liv.Co.1974). Thus, one with a claim under the NYSHRL must elect between his or her administrative or judicial remedies. *See Moodie v. Federal Reserve Bank of New York,* 58 F.3d 879 (2d Cir.1995). But Section 300 does not preclude a court in which a claim under the NYSHRL is pending from rendering judgment on that claim on the ground that another action under that statute is pending before another court.[7] *See State Div. of Human Rights v. County of Monroe,* 88 Misc.2d 16, 17–18, 386 N.Y.S.2d 317, 319 (Sup.Ct.Mon.Co.1976). Nothing in *Moodie,* relied upon by defendant, is to the contrary.

Finally, even if defendant had overcome all of these hurdles, there would be still another before it. While the alleged state court complaint is not before the Court, defendant asserts that it was filed on January 24, 1995, months before plaintiff's termination and certain of the events complained of in this action. (Def.Mem.12) In consequence, even if defendant's argument otherwise were well taken, it would have no effect on the award of front pay or the award of back pay for the period after January 24, 1995.

## III

Defendant next contends that the judgment, to the extent it rests on the New York City Human Rights Law ("NYCHRL"), should be set aside because plaintiff (a) failed to serve a copy of her complaint on the City Commissioner of Human Rights and the Cor-

---

treatment of plaintiff was discriminatory, as both involved Naraoka's role in the enterprise. As both the jurisdictional issues and the state law claims arose from a common nucleus of operative fact, the Court had supplemental jurisdiction over the state law claims irrespective of the outcome of the federal jurisdictional issue.

6. N.Y.Exec.L. § 290 *et seq.* (McKinney 1993).

7. Of course, principles of former adjudication in most cases would result in the adjudication in the first case to go to judgment controlling the outcome of any other then pending.

poration Counsel before filing this action as allegedly is required by Section 8–502(c) of the Administrative Code, and (b) seeks relief for actions which preceded September 16, 1991, the effective date of the NYCHRL. The arguments are without merit.

■ Section 8–502(c) of the Administrative Code requires persons bringing actions based upon Title 8 first to serve a copy of the complaint upon the Commissioner of Human Rights and the Corporation Counsel. As this Court previously has noted,[8] judges in this district have reached different conclusions as to whether the failure to do so, as defendant claims here, is fatal to a plaintiff's claim. This Court, however, is persuaded that it is not.

The issue is one of state law. In *Bernstein v. 1995 Associates*, 217 A.D.2d 512, 630 N.Y.S.2d 68 (1st Dept.1995), the Appellate Division, First Department, held that the giving of notice to the Commissioner and the Corporation Counsel is not "a condition precedent to maintaining a valid cause of action under Title 8 of the Administrative Code." 217 A.D.2d at 515, 630 N.Y.S.2d at 71. Rather, the court characterized it as "a device by which the City Commission ... and the Corporation Counsel would be apprised of any actions commenced under Title 8" and reversed the trial court's dismissal based on the failure to give notice. 217 A.D.2d at 516, 630 N.Y.S.2d at 72. Absent compelling indications that *Bernstein* would not be followed by the New York Court of Appeals, and there are none, this Court is obliged to give it great weight in determining the law of New York. *Bernstein* is consistent also with a number of decisions in this Court. *E.g., Kim v. Dial Service International, Inc.,* No. 96 Civ. 3327 (DLC), 1997 WL 5902, at *7 (S.D.N.Y. Jan. 8, 1997); *Luongo v. Nationwide Mutual Insurance Co.,* No. 95 Civ. 3190 (MBM), at *3, 1996 WL 445365 (S.D.N.Y. Aug. 7, 1996); *Persaud v. S. Axelrod Co.,* No. 95 Civ. 7849 (RPP), 1996 WL 11197, at *6 n. 1 (S.D.N.Y.1996). Accordingly, this Court

holds that the giving of notice under Section 8–502(c) is not a condition precedent to the maintenance of an action under Title 8 of the New York City Administrative Code. In any case, defendant has failed to preserve the point, as it did not move for judgment as a matter of law on this ground at trial. *Lambert v. Genesee Hospital,* 10 F.3d 46, 53–54 (2d Cir.1993).[9]

■ Defendant's contention that the NYCHRL claim, to the extent it rests on events prior to September 16, 1991, should be dismissed is puzzling. The point was not raised in the pretrial order or at trial. In view of the plain language of FED.R.CIV.P. 12(h)(2), it has been waived and may not be asserted by post-trial motion. *E.g., Brown v. Trustees of Boston University,* 891 F.2d 337 (1st Cir.1989) (failure to state claim waived if not raised by end of trial); 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1392, at 763 (1990). In any case, there would be little or nothing to the argument. While plaintiff testified to some age related comments and to the loss of a raise prior to September 1991, the raise thus lost never was quantified. The crux of the case was plaintiff's demotion and pay cut, effective June 30, 1992, and her subsequent termination.

## IV

■ Defendant contends that there was insufficient evidence to prove age discrimination or retaliation.

Viewing the evidence in the light most favorable to the plaintiff, the jury was entitled to find the following:

In 1987, Mr. Naraoka, president of Catch Ball, told plaintiff that she should be satisfied with her annual raise because her salary was high for someone as old as she. Subsequently, Naraoka told her on a number of occasions that plaintiff was old and that he preferred a younger person in her position. (Tr. 96)

---

**8.** *Dryden v. Tiffany & Co.,* 919 F.Supp. 165, 167 (1996).

**9.** Irrespective of whether compliance with Section 8–502(c) is a condition precedent to suit, it

is manifest in light of what has been said already that failure to comply is not a jurisdictional defect which was unaffected by defendant's failure to preserve the point.

In 1988, plaintiff received a raise lower than that of a younger employee. Upon questioning it, she was told by Naraoka that she was old and that it therefore did not matter what he paid her. (*Id.* 98–99)

In a July 1991 memorandum, Naraoka advised plaintiff that he wanted her to work until age 62, that he wanted to replace her as vice president of Catch Ball, and that he desired her support. (*Id.* 100)

In June 1992, Naraoka removed plaintiff as vice president and cut her pay. (*Id.* 108) In 1993, plaintiff met with Naraoka, who told her that if plaintiff were in Japan, she would retire or do "clerk work" after the age of 55. When plaintiff protested that this was the United States, Naraoka reiterated his view. (*Id.* 114)

In April 1994, Naraoka flatly asked plaintiff when she would leave. (*Id.* 115) When she responded that she wanted to work as long as she was healthy and the company profitable, perhaps until age 67 or 68, Naraoka told her that he did not want an old person hanging around, that she was not to stay past the age of 62, and that he wanted her to resign. (*Id.* 116) Plaintiff said that she would not resign and that Naraoka would have to fire her. Naraoka responded that he would not fire her but wanted her to quit. (*Id.*) In June 1994, the defendant began altering plaintiff's job responsibilities by shifting more and more of her duties to a younger employee, a process that accelerated when plaintiff filed an EEOC complaint in November 1994. (*Id.* 117)

On June 27, 1995, plaintiff reached age 62. In September 1995, the EEOC issued a right to sue letter to plaintiff. Shortly thereafter, plaintiff became the target of claims, which the jury was entitled to find were untrue, that she had been abusive and disrespectful in the office. She received no annual raise in 1995. (*Id.* 123) Finally, in early 1996, plaintiff was terminated. (*Id.* 133)

This evidence went substantially uncontroverted at trial. The only witness called by defendant was Sally Lee, the co-worker at Catch Ball who gradually succeeded to plaintiff's responsibilities. Ms. Lee was in no position to dispute the various statements attributed by plaintiff to Naraoka, and the jury was not obliged to believe the little she did say.

In these circumstances, the jury was more than amply justified in finding both age discrimination and retaliation. Indeed, the defendant's contrary argument is frivolous.

### Conclusion

Defendant's motion for judgment as a matter of law is denied in all respects.

SO ORDERED.