**Yarelis MOLINA VIERA, Plaintiff(s)**

v.

**Mohamoud YACOUB, Defendant(s).**

**Civil No. 03–1766(JAG).**

United States District Court,
D. Puerto Rico.

March 31, 2006.

Israel Roldan–Gonzalez, Aguadilla, PR, for Plaintiff(s).

Pedro J. Varela–Fernandez, Pedro J. Varela Law Office, San Juan, PR, for Defendant(s).

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

In June 2001, defendant Mohamoud Yacoub ("defendant") hired Plaintiff Yarelis Molina–Viera as an employee of "Thamina Store," a women's clothes retailer in Rio Piedras, Puerto Rico. After a week on the job, Molina–Viera was terminated from employment because she could not work on Saturdays.[1] Defendant explained to Molina–Viera that Saturday is Thamina's busiest day and, therefore, all employees must be available to work on that day. Molina–Viera countered that she is an active member of the Adventist Church and must attend religious services on Saturdays.

On August 13th, 2001, Molina–Viera filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendant, d/b/a/ Thamina Store, discriminated against her because of her religious beliefs. The EEOC issued a right to sue letter on April 16th, 2003. On July 14th, 2003, Molina–Viera filed the present complaint, alleging that she was dismissed by defendant because of her being a member of the Adventist Church, in violation of Title VII of the Civil Rights Act, 42 U.S.C.2000–2(a)(1), and several state laws. (Docket No. 1).

On November 3rd, 2003, defendant moved for summary judgment, arguing that Thamina Store does not fall under Title VII's definition of "employer," as it does not employ at least fifteen people.[2] On February 17th, 2004, Molina–Viera replied that defendant and his brothers own two additional stores, and that operations in all three stores are so integrated as to render them a single employer. Thus, Molina–Viera argues that when the employees of all three stores are aggregated, the statutory minimum of fifteen employees is met.

On April 26th, 2004, the Court denied, without prejudice, the motion for summary judgment, and granted the parties additional time to conduct discovery limited to the jurisdictional issue. (Docket No. 25). On January 27th, 2005, the Court ordered the parties to file briefs on the jurisdictional issue. (Docket No. 41). On February 22nd, 2005, the parties took depositions of defendant and his two brothers, Anwar Juma Yacoub and Ahmad Juma Yacoub. Shortly thereafter, the parties submitted their jurisdictional briefs. In light of its nature, the Court will address the issue at hand pursuant to a Fed.R.Civ.P. 12(b)(1) standard.

## STANDARD OF REVIEW

Under Fed.R.Civ.P. Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. As courts of limited jurisdiction, federal courts must narrowly construe jurisdictional grants. *See e.g., Alicea–Rivera v. SIMED,* 12 F.Supp.2d 243, 245 (D.P.R.1998). Consequently, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. *See Murphy v. United States,* 45

---

**1.** Molina–Viera worked at Thamina Store from June 1st, 2001 to June 8th, 2001. She was dismissed on June 11th, 2001.(Docket No. 1 at 3).

**2.** Under Title VII, a defendant is not liable unless it qualifies as an "employer," which is defined by the statute as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." 42 U.S.C. § 2000e(b).

**204**

F.3d 520, 522 (1st Cir.1995); *Droz–Serra-no v. Caribbean Records Inc.*, 270 F.Supp.2d 217 (D.P.R.2003). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence has been submitted, such as ... depositions and exhibits." *See Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir.1996).

Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions. *Negron–Gaztam-bide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994); *Torres Maysonet v. Drillex, S.E.*, 229 F.Supp.2d 105, 107 (D.P.R.2002). Under Rule 12(b)(6), dismissal is proper "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Gonzalez–Morales v. Hernandez–Arencibia*, 221 F.3d 45, 48 (1st Cir.2000)(*quoting Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990)). Under Rule 12(b)(1), dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable.

## DISCUSSION

Molina–Viera urges the Court to employ a "single-employer theory" analysis in order to qualify Thamina Store as an employer for purposes of Title VII. Specifically, Molina–Viera contends that defendant and his brothers have a "sui generis commercial relationship" where all three brothers supervise and perform the essential managerial duties of Thamina Store in Rio Piedras, Thamina Store in Caguas, and Marivel Fashions in Bayamon. Molina–Viera argues that the coordinated nature of this relationship renders it a single enterprise and, thus, requests that the employees of all three stores be counted for determining whether defendant is an employer for Title VII purposes. (Docket No. 44 at 9). The Court disagrees.

In *Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24, 27 (1st Cir.1980), the First Circuit identified three tests applied by some courts for determining whether a single employer exists under Title VII, to wit: the integrated-enterprise test, the corporate "sham" test, and the agency test. The First Circuit has neither explicitly adopted nor excluded any of these formulas; however, it has acknowledged that the integrated enterprise test is the standard adopted, or at least applied, by a majority of circuits. *Romano v. U–Haul International*, 233 F.3d 655, 665 (1st Cir.2000). Under the integrated enterprise test, a single employer exists if the following four factors are present: 1) interrelation of operations; 2)common management; 3) centralized control of labor operations; and 4)common ownership. *Id.*, at 666. In applying this test, factors such as sales, marketing, and advertising may be considered under the interrelation of operations prong "insofar as they establish direct parental involvement in the subsidiary's daily decisions." *Id.*, at 667. While the circuits are nearly unanimous in their view that control over employment decisions is a primary consideration in evaluating status, they differ as to the amount of control needed to satisfy this element. The Fifth, Tenth and Eleventh Circuits have adopted a stringent interrelatedness requirement focusing mainly on the employment decisions prong,[3] whereas the First Circuit adopted a more flexible approach that focuses on employment deci-

**3.** *Llampallas v. Mini–Circuits Lab., Inc.*, 163 F.3d 1236, 1244–1245 (11th Cir.1998)(finding that control of employment decision is crucial under the integrated enterprise test); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1071 (10th Cir.1998)(holding that parent must exercise unusual degree of control over the subsidiary); *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir.1997)(focusing on whether the parent was the final decision maker).

sions, "but only to the extent that [one entity] exerts an amount of participation [that] is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions". *Id.*, at 666 (quoting *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240–41 (2nd Cir.1995).

In the case at bar, Molina–Viera supported her jurisdictional brief with depositions of each of the Yacoub brothers. The brothers stated that sometimes one of them buys merchandise for all three in order to get a better price, but underscored that each one pays his share of the total, and each one assumes the risk of having profits or losses in his store. (Docket No. 49, Exhibit # 1 at 15; Exhibit # 2 at 3). They also stated that when one of them travels, the other brothers periodically visit the traveling brother's store to check for any needs the store might have during his absence.(Docket No. 49, Exhibit # 1 at 10–12; Exhibit # 2 at 2; Exhibit # 3 at 3). Moreover, the brothers admitted that each one independently owns his store, pays for municipal and state taxes, and hires his own manager and employees, without reference to common guidelines. (Docket No. 49, Exhibit # 1 at 16).

In light of the foregoing, the Court finds that Molina–Viera fails to produce evidence of common ownership and common management, and does not establish to the Court's satisfaction an interrelation of operations and a degree of centralized control of labor relations of the magnitude required by the First Circuit. Merely buying merchandise together (each one assuming his share of the price and risks) and looking after a brother's store while he is absent, is a far cry from the level of control and intermingling of operations required by the First Circuit for a single employer to exist. Perhaps, what best illustrates the nature of the defendant's

business is his answer to plaintiff's counsel's question regarding who is responsible for Thamina's losses: "I am screwed; I pay the consequences." (Docket No. 49, Exhibit # 1 at 16).

Molina–Viera cites several cases in her jurisdictional brief that expound a single-employer analysis, but whose facts are distinguishable from this case's. For instance, in *Westphal v. Catch Ball Products, Corp.*, 953 F.Supp. 475 (S.D.N.Y. 1997) and *E.E.O.C. v. Ecurie Alford, Ltd.*, 1993 WL 389433 (E.D.Va.1993), the Court ruled that a single employer existed after finding that each company was run by the same owner and, thus, the jury could infer that the same individual controlled the labor and employment policies of all companies.[4] Likewise, in *E.E.O.C. v. Arlington Transit Mix, Inc.*, 734 F.Supp. 804 (E.D.Mich.1990), the Court ruled that two concrete companies were interrelated, as the two companies were located at the same address, used the same letterhead, and shared the same board of directors and a slate of corporate officers. Finally, in *E.E.O.C. v. Financial Assurance, Inc.*, 624 F.Supp. 686 (W.D.Mo.1985), the court held that the limited partnership that directly employed the aggrieved employee, and another entity that was primarily owned and run by the father of the limited partnership's director, were a single employer because the employee signed in and out of work on the father company's attendance sheets.

Molina–Viera, however, does not furnish evidence such as that presented in the foregoing cases, even though the Court provided ample time for discovery. Hence, Molina–Viera's Title VII claims must fail on jurisdictional grounds.

## CONCLUSION

For the reasons stated above, and given that Molina–Viera does not deny that de-

---

4. In *Ecurie Alford, Ltd.,* the entities also shared the same officers.

fendant's store has less than fifteen employees, the Court hereby **DISMISSES,** with prejudice, all claims brought pursuant to Title VII. All supplemental state law claims are dismissed without prejudice. Judgment shall enter accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2006.