Wylene N. PLAYER, Plaintiff,

v.

NATIONS BIOLOGICS, INC., and
Riverfront Plasma Company,
Inc., Defendants.

No. 96–D–1778–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Nov. 24, 1997.

Robert C. Brock, Montgomery, AL, for Plaintiff.

Jasper P. Juliano, John Milton Bergquist, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are Defendants' Motion to Dismiss, filed January 2, 1997, and Defendants' Amended Motion to Dismiss, filed June 4, 1997. Plaintiff filed a response on August 1, 1997. After careful consideration of arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' motions are due to be denied.

### JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). The parties do not contest venue or personal jurisdiction.

### FACTUAL BACKGROUND

Defendant Rodney L. Savoy ("Savoy") incorporated Defendant Nations Biologics, Inc. ("Nations") on March 17, 1995 for the purpose of managing plasma centers. (Brief in Opp. To Def.s' Mot. To Dismiss, Deposition of Rodney L. Savoy ("Savoy Dep.") at 14.) At that time, Savoy began acquiring numerous plasma centers throughout the country, and Nations became engaged in the business of managing those centers. Savoy was the sole owner and officer of Nations. (Savoy Dep. at 16.) He was also the sole owner of the plasma centers. (Savoy Dep. at 16.) Among those plasma centers Nations managed and Savoy acquired was one in Phoenix City, Alabama. On August 29, 1995, Savoy incorporated that plasma center as Riverfront Plasma Company, Inc. ("Riverfront"). Riverfront is also a defendant in this action.

Other plasma centers acquired by Savoy and managed by Nations from March, 1995, through September, 1995, were Silver State in Las Vegas, Nevada ("Silver State"), Bloomington in Bloomington, Illinois ("Bloomington"), Green Street, in Champagne, Illinois ("Green Street"), and Amigo in El Paso, Texas ("Amigo"). Savoy was the sole owner and officer of each of these corporations, as well. (Savoy Dep. at 20.)

Throughout the calendar year of 1995, Silver State had approximately 18 employees, and Bloomington had approximately 15 employees. (Savoy Dep. at 18.) By the time it was operational, Green Street had approximately 18 employees. (Savoy Dep. at 17.) El Paso had approximately 20 employees. (Savoy Dep. at 27.)

All of the above named corporations, including Riverfront, shared the expenses of Nations, and Nations provided administrative financial services for the corporations by paying their bills, invoicing their plasma, managing their payroll, and negotiating their contracts. (Savoy Dep. at 19.) Further, Nations formulated the personnel policies for these corporations. (Id.) Although separate accounting books were maintained for each of the centers, Nations maintained a centralized cash account for all of the centers. (Savoy Dep. at 30.) Savoy was personally involved in each of these functions. (Id.) In the latter half of 1995, Savoy was also making the personnel decisions for Nations. (Savoy Dep. at 39.)

For several years prior to its incorporation by Savoy, Plaintiff Wylene Player was employed by the plasma center in Phoenix City, Alabama. On September 7, 1995, when that plasma center began business as Defendant

Riverfront, Plaintiff was employed as its Director. On November 2, 1995, approximately three months later, Defendants terminated Plaintiff's employment. The final determination to terminate Plaintiff was made by Savoy. There is conflicting evidence in the record as to whether Savoy made this decision in his capacity as President of Riverfront or as President of Nations. (Evid. Sub. In Supp. of Def.s' Mot. To Dismiss, Affidavit of Riverfront Plasma Company, Inc. ("Riverfront Affid.").); (Savoy Dep., Ex. 1, Nat.'s Resp. To E.E.O.C.)

Plaintiff contends that upon her termination, she was replaced by a younger male. Plaintiff alleges that the reasons given for her termination indicate that she was discriminated against because of her age and sex. Defendants contend that Plaintiff was terminated for legitimate business reasons.

On February 28, 1996, Plaintiff filed a charge of sex and age discrimination with the Equal Employment Opportunity Commission ("E.E.O.C."). She was issued a right to sue letter, dated September 6, 1996, and received by Plaintiff on September 8, 1996. She filed this action on December 4, 1996, alleging that Defendants violated 29 U.S.C. § 621, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), and 42 U.S.C. § 2000(e), *et seq.*, Title VII of the Civil Rights Act of 1991 (Title VII).[1]

Defendants filed their Motion to Dismiss on January 2, 1997, and an Amended Motion to Dismiss on June 4, 1997. Defendants state two grounds for dismissing Plaintiff's claims, both based on the court's lack of subject matter jurisdiction. First, Defendants claim that Plaintiff fails to prove that

Defendants meet the statutory definition of "employer" under the ADEA and Title VII necessary for the court to exercise jurisdiction. Second, Defendants claim that Plaintiff failed to timely file this lawsuit, and thus her claims are barred by the statute of limitations.

### MOTION TO DISMISS STANDARD

■ Defendants argue that pursuant to Federal Rule of Civil Procedure 12(b)(1), Plaintiff's claims are due to be dismissed for lack of subject matter jurisdiction. Lack of subject matter jurisdiction may be asserted by either party or by the court, *sua sponte,* at any time during the pendency of an action. Fed.R.Civ.P. 12(b)(1). Once challenged, the burden of establishing a federal court's subject matter jurisdiction rests on the party asserting the jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980).[2] In determining whether the court properly exercises subject matter jurisdiction, the court is to "consider the allegations of the complaint as true." *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.1981). Unlike a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissals for lack of subject matter jurisdiction do not involve the merits of the claim. *Id.* at 413.

### DISCUSSION

The ADEA prohibits discrimination by an employer based on an employee's age.[3] Title VII prohibits discrimination in employment on the basis of, among other factors, gender.[4]

---

1. Plaintiff originally filed this action against Nations Biologics and Riverfront Plasma Company, Inc. On June 26, 1997, Plaintiff amended her Complaint to include Rodney Savoy as a defendant.

2. Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) *(en banc).*

3. It states, in relevant part:
   It shall be unlawful for an employer to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . .
29 U.S.C. § 623.

4. It states, in relevant part:
   It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex or national origin . . .
   42 U.S.C. § 2000e–2.

Both the ADEA and Title VII define the term "employer" in specific terms. Under the ADEA, an employer is defined as "a person engaged in an industry effecting commerce who has 20 or more employees for each working day and each of the 20 or more calendar weeks on the current or preceding calendar year ..." 29 U.S.C. § 630(B). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year." 42 U.S.C. § 2000e(b). Defendants contend that Plaintiff cannot prove that the Defendants meet the minimum employee requirements of the ADEA and Title VII.

In support of its argument, Defendants contend that Riverfront and Nations are separate corporations with separate ownership and management. Furthermore, while Plaintiff was an employee of Riverfront, she was not an employee of Nations. (Riverfront Affid.) Defendants contend that Riverfront did not have 15 or more employees for each working day in each of 20 or more calendar weeks of 1995. (Riverfront Affid.) Rather, at the time Plaintiff was terminated, Riverfront employed only thirteen individuals. (Savoy Dep. at 97.) In response, Plaintiff contends that, because Riverfront, Nations, and Savoy's other plasma centers were "integrated enterprises," all owned by Savoy and managed by his company, Nations, the employees of all may be aggregated to meet the minimum requirements of Title VII and ADEA.

I.  Single Employer Analysis

The Eleventh Circuit has held that where two or more business are "highly integrated with respect to ownership and operations," the number of individuals employed by each may be aggregated for purposes of calculating whether the jurisdictional requirements of Title VII are met. *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir.1987) (quoting *Fike v. Gold Kist, Inc.*, 514 F.Supp. 722, 726 (N.D.Ala.), *aff'd* 664 F.2d 295 (11th Cir.1981)). *See also Lyes v. City of Riviera Beach Florida*, 126 F.3d 1380, 1384-85 (11th Cir.1997) (aggrega-

tion of number of employees proper where plaintiff shows such integration of operations as to be 'single employer'). This principle is similarly applicable in the ADEA context. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (interpretation of ADEA should follow Title VII construction). *See also Bruce v. S. & H. Riggers and Erectors, Inc.*, 732 F.Supp. 1172, 1175 (N.D.Ga.1990) (applying *McKenzie* in ADEA context).

■■■ To determine whether aggregation is appropriate, the Eleventh Circuit has adopted the standards promulgated by the National Labor Relations Board. *Lyes*, 126 F.3d 1380, 1384-85; *McKenzie*, 834 F.2d at 933. The court considers the following criteria: (1) interrelation of operations; (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *McKenzie*, 834 F.2d at 933. while aggregation under the single-employer theory is commonly alleged in the context of a parent-subsidiary relationship, it is not necessary for the parent-subsidiary relationship to exist for this theory to apply. *See, e.g., Stockett*, 791 F.Supp. at 1551; *Ruich v. Ruff, Weidenaar & Reiter*, 837 F.Supp. 881, 883 (N.D.Ill.1993). Where the same person or corporation owns both of the entities sought to be merged, and the other interrelationship factors are present, the "single employer" theory may be applicable. *See, e.g., Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391–92 (8th Cir.1977); *E.E.O.C. v. Arlington Transit Mix*, 734 F.Supp. 804, 806–07 (E.D.Mich.1990), *rev'd on other grounds*, 957 F.2d 219 (6th Cir.1991).

■■■ Defendants contend that there existed no interrelationship of operations, common management, common ownership or financial control between and among Savoy, Nations, and the other plasma centers. In support of this contention, Defendants point out that Nations operated and managed plasma centers other than Riverfront, each with its own management. (Riverfront Affid.) Further, Defendants state that there was no common ownership or financial control between Nations and Riverfront, as Nations did not have any financial interest in the owner-

ship of Riverfront. Rather, all of the financial interest was in the hands of Savoy. (Riverfront Affid.)

The court finds that Defendants' arguments miss the mark in this analysis. The relevant inquiry here is whether the companies under Savoy's control, namely Nations, Riverfront and the other plasma centers owned by Savoy and managed by Nations, were so interrelated as to meet the single-employer test adopted by the Eleventh Circuit. Should the court find that the factors set forth in *McKenzie* are met, then the number of employees of each plasma center owned by Savoy and managed by Nations may be aggregated when determining whether the named defendants meet the definition of "employer" set forth in Title VII and the ADEA. *See Westphal v. Catch Ball Products Corp.*, 953 F.Supp. 475 (S.D.N.Y.1997) (finding that "integrated enterprise" existed between defendant and two related companies, thereby meeting the jurisdictional requirements of Title VII and ADEA).[5]

Therefore, to determine whether Riverfront, Nations and the other plasma centers constitute an integrated enterprise, the court must determine the interrelatedness of all the companies under Savoy's control. Specifically, the court will consider the interrelatedness of Nations and the other plasma centers owned by Savoy.

## A. Interrelation of Operations

The court finds that there was a significant interrelationship of operations among Nations and the several plasma centers owned by Savoy and managed by Nations. Importantly, the plasma centers all shared the management services of Nations. Nations paid the bills of the corporations, invoiced the inventory, handled the payrolls, and negotiated the contracts of the plasma centers. (Savoy Dep. at 18, 19.); *See Baker*, 560 F.2d at 389; *Stockett v. Tolin*, 791 F.Supp. 1536, 1551 (S.D.Fla.1992). Savoy was personally involved in each of these aspects of Nations' management. (Savoy Dep. at 18, 19.)

## B. Common Management

There was common management over Nations and all plasma centers owned by Savoy. Savoy was the owner, president, and sole officer of Nations, Riverfront, and the Silver State, Green Street and Bloomington plasma

---

5. The court is well-aware of the Eleventh Circuit's holding in *Rogero v. B.M. Noone*, 704 F.2d 518 (11th Cir.1983). There, the court held that aggregation of employees of a County Tax Collector with those of the County for jurisdictional purposes was improper, as the plaintiff had not named the County in the Complaint. *Id.* at 521. The plaintiff conceded that the Tax Collector did not employ the requisite number of individuals for Title VII purposes. However, she claimed that, because the Tax Collector was an agent of the County, the individuals employed by the County could be aggregated in meeting the jurisdictional requirements of Title VII. Of concern to the Eleventh Circuit was the fact that, in failing to name the County as a defendant, plaintiff failed to give the County a chance to defend itself against potential liability. *Id.* at 521.

Before this court, however, is a different situation. In *Rogero*, the plaintiff sought to aggregate the employees of an unnamed entity, namely the County, under the theory that the named defendant County Tax Collector was an agent of the County. Here, Plaintiff alleges no agency relationship. Rather, she has named as Defendants to this action Riverfront—the corporation that employed her in name—, Nations, the company operating Riverfront and the other plasma centers, and Savoy, the owner of all of these entities. Plaintiff seeks to aggregate the employees of all the entities owned by Savoy and centrally managed by Nations. Rather than alleging that Riverfront is an agent of those companies, Plaintiff contends that all of the plasma centers owned by Savoy and operated by Nations can be considered a single entity for purposes of asserting Title VII and ADEA jurisdiction. The court agrees.

The court finds that the present situation is analogous to that found in *Westphal v. Catch Ball Products Corp.*, 953 F.Supp. 475, 479 (S.D.N.Y. 1997). There, relying on Second Circuit precedent similar to *McKenzie*, the district court found that where there was evidence that three related small companies—only one of which was a named defendant—were all run by the same individual, as well as evidence of common ownership and control and interrelationship of operations, summary judgment in favor of Defendant on the jurisdictional issue was inappropriate. *Id.*

A similar factual situation is found in the instant case. Here, as in *Westphal*, the Eleventh Circuit's notice concerns, articulated in *Rogero* are inapplicable. The unnamed plasma centers Plaintiff seeks to aggregate for purposes of calculating employees may not claim any notice concerns, as they are all owned and operated by named Defendants Savoy and Nations. Further, no liability will attach to these smaller entities via an agency theory.

centers. (Savoy Dep. at 16, 20, 21.) Importantly, Nations was created for the purpose of providing management for all the plasma centers owned by Savoy. (Savoy Dep. at 14.) This supports the second prong of the interrelated test. *See Stockett,* 791 F.Supp. at 1551.

### C. Centralized Control of Labor Relations

The court finds that there was significant centralized control of labor relations among Nations and all the plasma centers owned by Savoy. Nations and Savoy controlled the personnel management of all plasma centers. Nations formulated a universal personnel handbook, distributed to all plasma centers under its control, which established accepted employee policies and procedures. (Savoy Dep. at 20.) Furthermore, Savoy made personnel determinations for the plasma centers in his capacity as president of Nations. (Savoy Dep. at 50.) *See Stockett,* 791 F.Supp. at 1551 (centralized source of authority for personnel satisfies third prong of "integrated enterprise" test; *see also Williams v. New Orleans S.S. Assoc.,* 341 F.Supp. 613, 616 (E.D.La.1972) (same).

### D. Common Ownership or Financial Control

The court finds that there is common ownership or financial control between Riverfront, Nations, and Savoy's other plasma companies to classify the them as a single employer for Title VII and ADEA purposes. Savoy was the sole owner and officer of Nations, Riverfront and the other plasma centers. (Savoy Dep. at 16.) The profits of all plasma centers were pooled into one bank account in the name of Nations. (Savoy Dep. at 19, 31, 79, 94.) Nations maintained a centralized management account pooling the profits of all plasma centers to cover the losses of less successful ones. (Savoy Dep. at 31.) *See Stockett,* 791 F.Supp. at 1551 (fourth prong met where same individual controls all companies and serves as an officer and director with each of them).

Hence, the plasma centers owned by Savoy and managed by his company, Nations, were an "integrated enterprise" for purposes of aggregating the number of employees to meet the jurisdictional requirements of Title VII and the ADEA. Although Riverfront and Nations did not individually have the requisite number of employees to fall within the scope of Title VII or the ADEA, the court finds that the total number of individuals employed by Nations, Riverfront, and the additional plasma centers owned by Savoy and managed by Nations during the relevant time period meet the jurisdictional requirements of these statutes.[6]

### II Plaintiff's Complaint was Timely Filed.

The statutory period for filing suit under the ADEA is 90 days from the dismissal or termination of EEOC proceedings. 29 U.S.C. § 626(e). Title VII allows the claimant 90 days to file suit from the date the EEOC gives notice that it has dismissed the charge. 42 U.S.C. § 2000e–5(f)(1).

In the instant action, Plaintiff filed a complaint of sex and age discrimination with the EEOC on February 28, 1996. The EEOC issued Plaintiff's right to sue letter on September 6, 1996. On December 4, 1996, Plaintiff filed this action. Hence, Plaintiff filed this lawsuit within the 90 days required under Title VII and the ADEA. Accordingly, Defendants' Amended Motion to Dismiss on the grounds that Plaintiff's Complaint was not timely filed is due to be denied.

### ORDER

For the reasons set forth above, it is CONSIDERED and ORDERED that Defendants' Motion to Dismiss and Amended Motion to Dismiss Plaintiff's claim be and the same are hereby DENIED.

---

6. During the calendar year of 1995, Silver State employed approximately 18 individuals, Bloomington employed approximately 15 individuals, Green Street employed approximately 18 individuals, and El Paso employed approximately 20 individuals. (Savoy Dep. at 17, 18, 27.)