Kimberly LANDON, Plaintiff,

v.

AGATHA HARDEN, INC., d/b/a Checkcare Systems, et al., Defendants.

Civil Action No. 97–D–1106–N.

United States District Court, M.D. Alabama, Northern Division.

May 21, 1998.

Jay Lewis, Thomas E. Kondrak, Montgomery, AL, for Plaintiff.

Slade Watson, Mobile, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants' Motion to Disallow Plaintiff's First Amended Complaint, filed January 12, 1998. Plaintiff filed a Response to Defendants' Motion on January 15, 1998. In support of their Motion, Defendants argue that allowance of the First Amended Complaint would be unjust, abusive, and work an unfair burden on the Defendants.

Also pending before the court are the following: (1) Defendants' Motion to Dismiss Claims for Intentional Infliction of Emotional Distress/Tort of Outrage, filed September 19, 1997; (2) Defendants' Motion to Dismiss for Want of Jurisdiction, filed September 19, 1997, which was converted to a Motion for Summary Judgment by the court's September 29, 1997 Order; (3) Defendant's Motion to Dismiss as to Jeff Parnell, filed September 19, 1997; (4) Defendant's Motion to Dismiss as to Forrest Bishop, Jr., filed September 19, 1997; (5) Defendant's Motion to Dismiss as to Jeff Harden, filed September 19, 1997; (6) Defendant's Motion to Dismiss as to Agatha Harden, filed September 19, 1997; (7) Defendant's Amended Motion to Dismiss as to Agatha Harden, filed September 26, 1997; (8) Defendant's Amended Motion to Dismiss as to Jeff Harden, filed September 26, 1997; (9) Defendant's Amended Motion to Dismiss as to Forrest Bishop, Jr., filed September 26,

1997; (10) Defendant's Amended Motion to Dismiss as to Nancy Higgins, filed September 26, 1997; and (11) Defendant's Amended Motion to Dismiss as to Jeff Parnell, filed September 26, 1997. Defendants filed a Brief in Support of said Motions to Dismiss on September 26, 1997.

After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that (1) Defendants' Motion to Disallow the First Amended Complaint is due to be denied; (2) Defendants' Motion to Dismiss for Want of Jurisdiction, converted to a Motion for Summary Judgement, is due to be granted with respect to Plaintiff's Title VII claims against all Defendants in their individual capacity and denied without prejudice with respect to Plaintiff's Title VII claims against Agatha Harden, Inc., d/b/a Checkcare Systems; and (3) Defendants' remaining Motions to Dismiss are due to be denied without prejudice.

### JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The parties do not contest personal jurisdiction or venue.

### BACKGROUND

Plaintiff filed her original Complaint in this action on July 17, 1997, asserting claims against Defendants for violations of 42 U.S.C. § 2000e ("Title VII"). In response to this Complaint, on September 19, 1997, and September 26, 1997, Defendants filed numerous Motions to Dismiss for want of jurisdiction and failure to state a claim. On September 29, 1997, United States Magistrate Judge Susan Russ Walker entered an Order that Defendants' September 19, 1997 Motion to Dismiss for want of jurisdiction be treated by the court as a Motion for Summary Judgment, and Directed the Defendants to file deposition transcripts referenced in the Motion. Judge Walker also Ordered a briefing schedule for the Parties. On November 5, 1997, Plaintiff filed a Consolidated Response to the Motions to Dismiss. On December 8, 1997, Defendants filed a Responsive Memorandum to Plaintiff's Response to Motion for Summary Judgment and Motions to Dismiss.

On December 10, 1997, Plaintiff filed a Motion to Dismiss from her original Complaint Counts II, IV and V. Also on December 10, 1997, Plaintiff filed a Motion for Leave to Amend the Complaint. On December 12, 1997, Judge Walker Granted Plaintiff's Motion for leave to Amend Complaint and Denied as Moot the Motion to Dismiss. Plaintiff's Amended Complaint was filed December 12, 1997. Plaintiff's First Amended Complaint asserts claims for violations of both Title VII and 42 U.S.C. § 1981 ("Section 1981").

### DISCUSSION

**I. Motion to Disallow First Amended Complaint**

The decision to grant leave to amend a complaint is within the sole discretion of the district court. Fed.R.Civ.P. 15. Rule 15(a) of the Federal Rules of Civil Procedure, however, limits the court's discretion by mandating that "leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a); *see Halliburton & Associates v. Henderson, Few & Co.,* 774 F.2d 441 (11th Cir.1985). Therefore, there must be a substantial reason to deny a motion to amend. *Id.* Substantial reasons justifying a denial include "undue delay, bad faith, dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

As set forth above, Plaintiff originally filed her Complaint on July 17, 1997, in response to which Defendants filed numerous Motions to Dismiss, one of which has been converted to a Motion for Summary Judgment. Discovery has been conducted in this case.

Defendants claim that by responding to Plaintiff's original Complaint and discovery requests, they have incurred expenses and costs in the sum of approximately $8,2000. (Mot. to Disallow First Amended Compl. at ¶ 8.) Defendants contend that allowance of the First Amended Complaint will put the Defendants to substantial additional expense to re-depose Plaintiff, conduct extensive discovery as to new allegations, and re-brief issues which Defendants contend Plaintiff could have raised in her original Complaint.

(*Id.* at. ¶ 10.) Defendants argue that requiring them to undergo the delay, time and expense they will incur "simply as a result of the Plaintiff's failure to make allegations that could have been made either in the original Complaint, or a very early amendment thereto, would work substantial and unjust hardship on these Defendants." (*Id.* at ¶ 11.)

In Response to Defendant's Motion to Disallow First Amended Complaint, Plaintiff states that, subsequent to filing her original Complaint on July 17, 1997, she retained additional counsel, which "undertook to 'clean up' the Complaint, deleting such claims and counts as were not completely supported by the facts, and reframing counts to afford Plaintiff all the relief as to which she would be entitled." (Pl.'s Resp. to Mot. to Disallow First Amended Compl. at ¶ 3.) Plaintiff states that the amendments to the original Complaint are merely jurisdictional, and not substantive, as both Complaints allege race discrimination and retaliation. (*Id.* at ¶ 6.) Hence, Plaintiff argues, there are no new allegations to prejudice the Defendants by the late filing of the Amended Complaint. (*Id.* at ¶ 8.)

As a threshold matter, the court notes that Title VII forbids disparate treatment on the basis of sex, race, color, religion, or national origin in a wide range of employment practices, including hiring, discharge, and promotion. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994) (citing *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1526 (11th Cir.1992)).[1] Section 1981 prohibits race discrimination in the making and enforcing of contracts and is a statutory remedy available in both the public and private sectors.[2] *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

The allocation of burdens and elements of a prima facie case are the same for employment claims stemming from Title VII and Section 1981. *See St. Mary's Honor Ctr.*

*v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 524 n. 2 (11th Cir.1994); *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir.1994). Based on this similarity, the court finds that Plaintiff's Amended Complaint, which states a claim pursuant to Section 1981 for race discrimination and retaliation, in addition to the claims alleged under Title VII in Plaintiff's original Complaint, will not cause Defendants substantial or unjust hardship with regard to defending against the allegations raised therein. Further, Plaintiff has provided sufficient justification for the delay in amendment to warrant a finding that the Amended Complaint is not the result of Plaintiff's undue delay, bad faith, or dilatory motive. Accordingly, the court finds that Defendants' Motion to Disallow the First Amended Complaint is due to be denied.

## II. Motion for Summary Judgment

### A. Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a

---

1. 42 U.S.C.A. § 2000e–2(a)(1) (West 1981) provides:

 It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex or national origin.

2. 42 U.S.C. § 1981 provides in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens."

situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

## B. Discussion[3]

Defendants argue that summary judgment is due in their favor because the court lacks subject matter jurisdiction over this cause. Specifically, Defendants claim that Plaintiff fails to state a claim against any "employer," as defined by Title VII.

The statutory definition of "employer" under Title VII is:

> a person, or agent of such person, engaged in an industry affecting commerce, employing 15 or more employees for 20 or more weeks in the calendar year current or immediately preceding the date of the alleged act.

42 U.S.C. § 2000e(b). The United States Supreme Court has recently approved of the "Payroll method" for determining whether an entity is an "employer" under the terms of Title VII. Specifically, the Court held that for purposes of the statutory definition of an "employer" subject to Title VII liability, an entity has as its "employees" all individuals with which it had an employment relationship on the day in question, whether or not the employee worked or was compensated on the given day. *Walters v. Metropolitan Educational Enterprises, Inc.,* 519 U.S. 202, ———— ———, 117 S.Ct. 660, 663–64, 136 L.Ed.2d 644 (1997). This is most readily demonstrated by whether the individual appears on the employer's payroll. *Id.*

Defendants assert that, according to the payroll method, Defendant Agatha Harden, Inc., d/b/a Checkcare Systems, a named Defendant in this action, is not an "employer" within the meaning of Title VII, as the Checkcare Systems entity named as a Defendant in Plaintiff's Complaint maintained less than the fifteen employees required by Title VII during the relevant time period. (Mot. to Dis. for Want of Juris., Aff. in Supp. of Mot. to Dis. at 2.) Thus, Defendants argue, the court is deprived of subject matter jurisdiction over this matter. (Br. in Supp. of Mots. to Dis. at 2.)

**3.** The facts upon which the court bases its findings are incorporated into the court's Discussion.

In response to Defendants' Motion for Summary Judgment, Plaintiff states that Agatha Harden, Inc., d/b/a Checkcare Systems is an employer within the meaning of Title VII based on the fact that the aggregate number of individuals employed by various Agatha Harden, Inc. entities meets Title VII's statutory requirements for jurisdiction. Plaintiff states that there are at least three locations at which Agatha Harden, Inc. does business. (Consolidated Resp. to Mots. to Dis. at 2.) Namely, the primary operational facilities, doing business as "Checkcare Systems," are in Mobile and Montgomery, Alabama, while the corporate headquarters of Agatha Harden, Inc. are located in Columbus, Georgia. (*Id.*) Plaintiff states that all three locations are subject to the "direct control" of the company's owners in Columbus, Georgia, and thus the court should aggregate the numbers of employees of each entity for purposes of determining whether Defendant Agatha Harden, Inc. d/b/a/ Checkcare Systems in Montgomery, Alabama, had the requisite number of employees for Title VII purposes. In sum, Plaintiff contends, "[i]t is clear that Agatha Harden, Inc., and not Agatha Harden, Inc., d/b/a Checkcare Systems of Montgomery, is the real employer ... and it is the employer of at least 35–50 employees." (Consolidated Resp. to Mots. to Dis. at 3.)

The Eleventh Circuit has held that where two or more businesses are "highly integrated with respect to ownership and operations," the number of individuals employed by each may be aggregated for purposes of calculating whether the jurisdictional requirements of Title VII are met. *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir.1987)(quoting *Fike v. Gold Kist, Inc.*, 514 F.Supp. 722, 726 (N.D.Ala.), *aff'd* 664 F.2d 295 (11th Cir. 1981)).

 To determine whether aggregation is appropriate, the Eleventh Circuit has adopted standards promulgated by the National Labor Relations Board. *McKenzie*, 834 F.2d at 933. The court considers the following criteria: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *McKenzie*, 834 F.2d at 933. While aggrega-

tion under the single-employer theory is commonly alleged in the context of a parent-subsidiary relationship, it is not necessary for the parent-subsidiary relationship to exist for this theory to apply. *See, e.g., Stockett v. Tolin*, 791 F.Supp. 1536, 1551 (S.D.Fla.1992); *Ruich v. Ruff, Weidenaar & Reidy*, 837 F.Supp. 881, 883 (N.D.Ill.1993). Where the same person or corporation owns both of the entities sought to be merged, and the other interrelationship factors are present, the "single employer" theory may be applicable. *See, e.g., Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391–92 (8th Cir.1977); *E.E.O.C. v. Arlington Transit Mix*, 734 F.Supp. 804, 806–07 (E.D.Mich. 1990), *rev'd on other grounds*, 957 F.2d 219 (6th Cir.1991).

Plaintiff argues that, because the three locations at which Agatha Harden, Inc. does business meet these criteria, aggregation of the number of individuals employed by the three is appropriate for purposes of determining whether the jurisdictional requirements of Title VII are met. (Consolidated Resp. to Mots. to Dismiss at 2.) As a threshold matter, Defendants argue that aggregation is inappropriate here, as the entities that Plaintiff urges the court to consider for aggregation purposes are not named as Defendants in Plaintiff's Complaint. (Defs.' Resp. Mem. to Pl.'s Resp. to Mot. for Summ. J. and Mots. to Dis. ("Defs.' Resp. Mem.") at 1–2.) Defendants assert that Plaintiff may not seek to:

> unilaterally expand her own definition and description of Checkcare to confer jurisdiction on this court, by aggregating the employees of the Defendant Checkcare Systems of Montgomery with the employees of other businesses. Plaintiff attempts to assert this new theory *after* her deposition has been taken and *after* she has admitted facts demonstrating lack of jurisdiction.

(Defs.' Resp. Mem. at 2.) In sum, Defendants assert, Plaintiff may not assert a new theory on a counter response to a Motion for Summary Judgment. (*Id.*)

The court finds that Plaintiff may, indeed, assert the argument that aggregation of employees of the three Agatha Harden, Inc. entities is appropriate here. The relevant

inquiry here is whether the three Agatha Harden, Inc. entities are so interrelated as to meet the single-employer test adopted by the Eleventh Circuit. Should the court find that the factors set forth in *McKenzie* are met, then the number of employees of each Agatha Harden, Inc. entity may be aggregated when determining whether the named defendants meet the definition of "employer" set forth in Title VII. *See Player v. Nations Biologics, Inc.*, No. CV 96–D–1778–E, 993 F.Supp. 878, 880 (M.D.Ala.1997)(De Ment, J.); *see also Westphal v. Catch Ball Products Corp.*, 953 F.Supp. 475 (S.D.N.Y.1997)(finding that "integrated enterprise" existed between defendant and two related companies, thereby meeting the jurisdictional requirements of Title VII and ADEA).[4]

Having found that the application of the single employer analysis is appropriate here, the court will now examine whether the three Agatha Harden, Inc. entities do, in fact, meet the criteria for a "single employer" as articulated by the Eleventh Circuit in *McKenzie*, 834 F.2d at 933. In arguing in favor of aggregation of the number of individuals employed by the Agatha Harden, Inc. entities, Plaintiff states that there are three locations at which Agatha Harden, Inc. does business,

and all three are subject to the direct control of the company's owners in Columbus, Georgia. (Consolidated Resp. to Defs.' Mots. to Dis. at 2.) In examining Plaintiff's contention, the court will consider each of the four *McKenzie* factors.

### 1. Interrelation of Operations

Courts have found that entities are interrelated with respect to their operations where the evidence shows that there are shared management services, such as check writing and contract negotiations, shared payroll and insurance programs, the preparation of mutual policy manuals, and the use of employees on the payroll of one entity for the performance of work benefitting another nominally separate entity. *See Player*, 993 F.Supp. 878, 880; *Stockett*, 791 F.Supp. at 1551 (citing *Stuart Broadcasting*, 560 F.2d at 392; *EEOC v. Wooster Brush Co.*, 523 F.Supp. 1256, 1262 (N.D.Ohio 1981)).

In support of her argument that there is sufficient interrelation of the Agatha Harden, Inc. entities to warrant aggregation of the number of employees, Plaintiff states that written policies promulgated by the Agatha Harden office in Columbus, Georgia, are applicable to all employees, insurance coverage

---

**4.** The court is well-aware of the Eleventh Circuit's holding in *Rogero v. B.M. Noone*, 704 F.2d 518 (11th Cir.1983). There, the court held that aggregation of employees of a County Tax Collector with those of the County for jurisdictional purposes was improper, as the plaintiff had not named the County in the Complaint. *Id.* at 521. The plaintiff conceded that the Tax Collector did not employ the requisite number of individuals for Title VII purposes. However, she claimed that, because the Tax Collector was an agent of the County, the individuals employed by the County could be aggregated in meeting the jurisdictional requirements of Title VII. Of concern to the Eleventh Circuit was the fact that, in failing to name the County as a defendant, plaintiff failed to give the County a chance to defend itself against potential liability. *Id.* at 521.

Before this court, however, is a different situation. In *Rogero*, the plaintiff sought to aggregate the employees of an unnamed entity, namely the County, under the theory that the named defendant County Tax Collector was an agent of the County. Here, Plaintiff alleges no agency relationship. Rather, she has named as Defendants to this action defendants Agatha Harden, Inc. d/b/a/ Checkcare Systems, and Jeff Harden and Agatha Harden, owners of Agatha Harden, Inc. Rather than alleging that Checkcare Systems is

an agent of Agatha Harden, Inc., Plaintiff contends that all of the Agatha Harden, Inc. entities owned by Agatha Harden and Jeff Harden can be considered a single entity for purposes of asserting Title VII. The court agrees.

The court finds that the present situation is analogous to that found in *Westphal v. Catch Ball Products Corp.*, 953 F.Supp. 475, 479 (S.D.N.Y. 1997). There, relying on Second Circuit precedent similar to *McKenzie*, the district court found that where there was evidence that three related small companies—only one of which was a named defendant—were all run by the same individual, as well as evidence of common ownership and control and interrelationship of operations, summary judgment in favor of Defendant on the jurisdictional issue was inappropriate. *Id.*

A similar factual situation is found in the instant case. Here, as in *Westphal*, the Eleventh Circuit's notice concerns, articulated in *Roger* are inapplicable. The unnamed Agatha Harden, Inc. entities Plaintiff seeks to aggregate for purposes of calculating employees may not claim any notice concerns, as they are all owned by named Defendants Agatha Harden and Jeff Harden, or the entity owned by Agatha Harden and Jeff Harden. Further, no liability will attach to these smaller entities via an agency theory.

is managed from the home office, and paychecks and W–2 forms are issued from the home office. (Consolidated Resp. to Defs. Mots. to Dis., Ex. B, Aff. of Kimberly Landon ("Landon Aff.").)

However, according to Defendants, worker's compensation insurance, employee health insurance, and liability insurance for Checkcare Systems of Montgomery is obtained and maintained separately from those for Checkcare Systems of Mobile. (Aff. of Jeff Harden, attached to Defs.' Resp. Mem. to Pl.'s Resp. to Mot. for Summ. J. and to Mots. to Dis. ("Jeff Harden Aff.") at 2; Aff. of Agatha Harden, attached to Defs.' Resp. Mem. to Pl.'s Resp. to Mot. for Summ. J. and to Mots. to Dis. ("Agatha Harden Aff.") at 2.) Furthermore, Defendants assert that the accounting records, bank accounts, and payrolls of Checkcare Systems of Montgomery and Mobile are all separate. (Jeff Harden Aff. at 3.) Defendant states that the W–2 forms for employees at both entities are issued by Agatha Harden, Inc. due to Internal Revenue Service requirements. (*Id.*) In short, Defendants maintain that Checkcare Systems of Montgomery and Checkcare Systems of Mobile are maintained as completely separate entities. (*Id.*)

In sum, both parties offer affidavit statements intending to show that the Agatha Harden, Inc, entities are or are not interrelated with respect to their operations. The facts alleged in the various affidavits do not necessarily conflict, although the inferences arising therefrom do. In accordance with its obligation to construe all facts and inferences in a light most favorable to the nonmoving Party to a Motion for Summary Judgment, the court finds that this factor weighs in favor of aggregation of employees.

2. Centralized Control of Labor Relations

Courts have based a finding of centralized control of labor relations on evidence showing a single entity maintained personnel records for all of the companies, that a personnel department was shared, that personnel were transferred and promoted from one company to another, that the same persons made employment decisions for all entities, and that the entities share a universal personnel handbook. *See Player*, 993 F.Supp. 878, 880; *Stockett*, 791 F.Supp. at 1551 (citing *McLean Trucking*, 520 F.2d at 230);

*Ratcliffe v. Insur. Co. of North America*, 482 F.Supp. 759, 765 (E.D.Pa.1980); *Williams v. New Orleans S.S. Assoc.*, 341 F.Supp. 613, 616 (E.D.La.1972).

In support of her contention that the Agatha Harden, Inc. entities are interrelated entities, Plaintiff states that employees at one Agatha Harden, Inc. location were trained at another. She offers the affidavit of Lisa Tucker, which states that Ms. Tucker's promotion from collector to collections manager at the Checkcare Systems of Montgomery office was subject to the approval of Jeff Harden. (Consolidated Resp. to Mots. to Dis., Pl.'s Ex. A, Aff. of Lisa Tucker ("Tucker Aff.").) Further, Ms. Tucker states that upon her promotion, Jeff Harden requested that Tucker go to the Mobile office of Agatha Harden, Inc. to receive training for her new position. (*Id.*) In addition, Tucker states that, in her duties as Collections Manager, she prepared reports which were sent to Jeff Harden at the Mobile office. (*Id.*)

Defendants do not dispute the fact that Jeff Harden approved Tucker's promotion and that Tucker was trained at the Mobile location. However, Defendants nevertheless contend that the business and employment decisions of each of the Checkcare Systems entities are made by the managers of the respective franchises. (Agatha Harden Aff. at 2.) Again viewing the record in a light most favorable to the Plaintiff, the court finds that there is a genuine issue of fact as to whether the labor relations of the Agatha Harden, Inc, entities are subject to centralized control.

3. Common Management, Ownership and Control

Where the evidence shows that there exists common management over the nominally distinct entities by one individual or group of individuals, courts have found that the third prong of the interrelatedness test is satisfied. *See Player*, 993 F.Supp. 878, at 880; *Stockett*, 791 F.Supp. at 1551. Furthermore, where one individual or group of individuals controls all the relevant entities and serves as an officer and director with each of them, courts have found that there exists sufficient evi-

dence of common ownership or control over the entities. *See Player,* 993 F.Supp. 878, at 880; *Stockett,* 791 F.Supp. at 1551.

In support of her contention that there was common ownership and control of Agatha Harden, Inc. and the Checkcare Systems of Montgomery and Mobile, Plaintiff offers Ms. Tucker's sworn statement that Agatha Harden and Jeff Harden would frequently visit the Checkcare Systems of Montgomery office, "making it known" to Tucker that they were the managers and owners of both offices. (Tucker Aff.) In her own Affidavit, Plaintiff states:

It was ... known to me that Agatha Harden and Jeff Harden, who is the son of Agatha Harden, were involved in the day to day management and employment decisions of both business offices and they apportioned their time between the Montgomery and Mobile offices. During my employment, I was informed by defendants Nancy Higgins and Forrest Bishop, Jr., that business decisions, including employment matters, must be approved by Agatha Harden or Jeff Harden.... In my daily duties as a collector, it was known to me that some client accounts in the Montgomery office were interfaced in the office computer system with the Mobile Checkcare office.

(Landon Aff. at 2.)

Defendants contest Plaintiff's characterization of the relationship between the Agatha Harden, Inc. entities. Specifically, Defendants state that, although Jeff Harden and Agatha Harden own Agatha Harden, Inc., the two individuals do not manage the Agatha Harden Inc. Checkcare Systems entities. Rather, as owners of Agatha Harden, Inc., Jeff and Agatha Harden are merely interested in the operation and success of the Checkcare Systems franchises, but do not engage in their daily management. Jeff Harden states:

I do not manage and have not managed the business of Checkcare Systems of Montgomery, and I did not manage and have not managed the labor relations of Checkcare Systems of Montgomery. Checkcare Systems of Montgomery has been managed, both as to its business affairs and labor relations, by separate managers.

(Jeff Harden Aff.) (*See also* Agatha Harden Aff.)

Again, the court is bound to view the inferences arising from these affidavits in a light most favorable to the Plaintiff. Checkcare Systems of Montgomery and Checkcare Systems of Mobile may, in fact, be managed on a daily basis by local and separate managers. Plaintiff nevertheless has offered affidavits in support of the contention that the owners of Agatha Harden, Inc., which, in turn, owns the Checkcare Systems locations, also exert some degree of control over the operations and management of the Checkcare Systems entities. Viewing these facts in a light most favorable to the Plaintiff, the court finds that there exists a question of fact with respect to whether the Agatha Harden, Inc, entities are subject to common management, ownership and control.

Based on the foregoing, the court finds that Plaintiff has offered sufficient evidence to show that Agatha Harden, Inc., d/b/a Checkcare Systems of Montgomery—the named defendant in this action—is so interrelated to either Checkcare Systems of Mobile or Agatha Harden, Inc.'s corporate headquarters in Columbus, Georgia, to warrant aggregation of the number of individuals employed by each entity for purposes of establishing Title VII liability. In making this finding, the court notes that the evidentiary record on this matter is scant. Federal Rule of Civil Procedure 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered the adverse party.

Fed.R.Civ.P. 56(e). Here, in their Motion for Summary Judgment, Defendants alleged that Checkcare Systems of Montgomery did not meet the jurisdictional requirements of Title VII. In accordance with Fed.R.Civ.P. 56(e), Plaintiff offered affidavits in support of her contention that the various Agatha Harden,

Inc. entities are so interrelated that aggregation of the number of employees for Title VII purposes is warranted under the single employer theory. Defendants offered counter-affidavits in reply to Plaintiff's affidavits. Thus, in essence, the court is faced with a "swearing match" between the Parties with regard to the nature of the relationship between the various Agatha Harden, Inc. entities. On a Motion for Summary Judgment, the court is bound to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. 1598. In accordance with this standard, the court finds that there is a material issue of fact as to whether the Agatha Harden, Inc. entities, including Checkcare Systems of Montgomery, are so interrelated with respect to operations, management, ownership and control, as to warrant aggregation of the number of employees of Checkcare Systems of Montgomery with other Checkcare Systems. Thus, at this point in the proceedings, summary judgment on Plaintiff's Title VII claims against Agatha Harden, Inc. d/b/a Checkcare Systems is inappropriate. This denial is without prejudice, and the court may revisit this issue at a later stage of the proceedings, should the record indicate that reconsideration is appropriate. Plaintiff concedes that her Title VII claims against the individual named Defendants are due to be dismissed. (Consolidated Resp. to Mots. to Dis. at 4.)

## ORDER

Based on the foregoing, the following is hereby CONSIDERED and ORDERED:

(1) Defendants' Motion to Disallow the First Amended Complaint be and the same is hereby DENIED.

(2) Defendants' Motion to Dismiss for Want of Jurisdiction, filed September 19, 1997, and converted to a Motion for Summary Judgement on September 29, 1997, be and the same is hereby GRANTED with respect to Plaintiff's claims brought pursuant to Title VII against Agatha Harden, Jeff Harden, Nancy Higgins, Forrest Bishop, Jr., and Jeff Harden in their individual capacities, and Agatha Harden, Inc. d/b/a Checkcare Systems.

(3) Defendants' Motion to Dismiss for Want of Jurisdiction, filed September 19, 1997, and converted to a Motion for Summary Judgment on September 29, 1997, be and the same is hereby DENIED WITHOUT PREJUDICE with respect to Plaintiff's claims brought pursuant to Title VII against Agatha Harden, Inc, d/b/a Checkcare Systems.

(4) Defendants' remaining Motions to Dismiss and Amended Motions to Dismiss be and the same are hereby DENIED WITHOUT PREJUDICE. The court shall grant both Plaintiff and Defendants leave to more fully develop, brief and argue the issues raised in said Motions upon a Party's Motion for Summary Judgment.